UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANDREI SMITH,<br><br>       Plaintiff,<br><br>    v.<br><br>CAFÉ ASIA,<br><br>       Defendant. | Civil Action No. 07cv621 (RWR/JMF) |

**MOTION TO COMPEL PLAINTIFF TO PRODUCE
IMAGES STORED ON PLAINTIFF'S CELL PHONE**

COMES NOW Defendant Café Asia, pursuant to Fed. R. Civ. P. 26(b)(1), and Judge Roberts' direction at the Initial Scheduling Conference on May 25, 2007, and moves to compel Plaintiff Andrei Smith ("Plaintiff") to allow counsel for Café Asia to inspect Plaintiff's cellular telephone and to make copies of the images Plaintiff had on his cellular telephone during his employment at Café Asia, on the following grounds:

1.      Plaintiff's First Cause of Action for Sexual Orientation Discrimination under the DC Human Rights Act requires a fact-specific contextual analysis that considers Plaintiff's own behavior at work, and

2.      The sexually explicit images stored on Plaintiff's cell phone, which Plaintiff showed to numerous employees at Café Asia throughout his employment at Café Asia, strongly demonstrate that Plaintiff initiated and invited sexually explicit images, jokes and comments, such that the e-mail (sent to a group of people) about which he now complains was not subjectively offensive to him.

These reasons in support of this motion are set forth in greater detail in the Memorandum of Points and Authorities filed concurrently herewith, along with the Declarations of Yan Yan Joey and Kaoru Sawada in support thereof.

Pursuant to Local Rule 7(m), Counsel for Defendant hereby certifies that the parties have met and conferred about producing the images stored on Plaintiff's cell phone several times during the course of their Rule 16.3 discussions in early May, in a good faith effort to resolve this dispute informally.  Counsel informed Judge Roberts of this issue during the Initial Scheduling Conference on May 25, 2007, and Judge Roberts ordered briefing on this specific discovery dispute and referred this issue to Magistrate Judge John M. Facciola for resolution. Judge Roberts placed a stay on the rest of discovery until this issue is decided.

Since this issue is critical to the resolution of this case, pursuant to Local Rule 7(f), moving party, Café Asia, requests oral argument on this motion.

Respectfully submitted,

Dated:  June 9, 2007

Kevin B. Bedell (D.C. Bar No. 451555)
Greenberg Traurig, LLP
1750 Tysons Boulevard, Suite 1200
McLean, VA 22102
Tel:  (703) 749-1339
Fax:  (703) 714-8339

William Ihrke (D.C. Bar No. 483748)
Jeffrey Wertheimer (*pro hac vice*)
Anna Kogan (*pro hac vice*)
Rutan & Tucker, LLP
611 Anton Blvd., Fourteenth Floor
Costa Mesa, CA 92626
Tel:  (714) 641-5100
Fax:  (714) 546-9035

*Counsel for Defendant Café Asia*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANDREI SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 07cv621 (RWR/JMF) |
| | ) |
| CAFÉ ASIA, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO COMPEL PLAINTIFF TO PRODUCE
IMAGES STORED ON PLAINTIFF'S CELL PHONE**

**I.    OVERVIEW**

Plaintiff Andrei Smith was a waiter at Defendant's restaurant, dba Café Asia, for less than a year, from September 18, 2005 to approximately August 23, 2006.  Complaint ¶¶ 5, 14. Like the owner of Café Asia, Plaintiff's former manager, and numerous other staff members, Plaintiff is homosexual.  In fact, Plaintiff found work at Café Asia through another homosexual male waiter at Café Asia, whom Plaintiff met on a gay internet dating website.  Despite the fact that Plaintiff's sexual orientation was shared by the owner, manager, and many staff members at Café Asia, Plaintiff now claims that he was discriminated against because he is gay.

In order to substantiate his claim for sexual orientation discrimination under the D.C. Human Rights Act, Plaintiff must prove that he was subject to **unwelcome** sexual conduct.  This element requires an analysis of Plaintiff's *subjective* state of mind, and to prevail Plaintiff must prove that the alleged conduct was offensive to <u>him</u>.  Plaintiff's *own* standards of behavior provide some of the best evidence of what he considers "offensive."  What is sought by this motion is evidence establishing Plaintiff's standards of behavior.

1

During the time Plaintiff was employed by Café Asia, Plaintiff would frequently use his cell phone to take pictures of his own genitals on his days off.  Then, on countless occasions after returning to work, Plaintiff would show his co-workers images on his cell hone of his penis, in various states of arousal, as well as similarly graphic images of his various lovers.  Although his co-workers expressed no interest in these photographs, Plaintiff continually took such pictures and constantly shared them with his co-workers during his workday.  Along with the photographs, Plaintiff would share extremely graphic details of his active sex life.  During slow moments at the restaurant, Plaintiff would use his manager's computer to search gay pornographic websites and then show his manager nude photographs of himself that he had placed on the internet.  After months of viewing countless photographs of Plaintiff's penis, as well as the genitals of his sexual partners, one of Defendant's employees sent Plaintiff a sexually explicit e-mail and he is now using that e-mail as the basis of this lawsuit.

Plaintiff has indicated that he objects to producing these pictures on the grounds of privacy.  Obviously, Plaintiff did not consider these cell phone pictures private before he filed this lawsuit.  Now, these cell phone images are crucial to understanding the context of Plaintiff's sexual discrimination claim.  These images are directly relevant to Plaintiff's First Cause of Action, and are clearly discoverable under Fed. R. Civ. P. 26(b)(1).  Furthermore, to protect Plaintiff's privacy interests, the parties have already stipulated to a Protective Order, which Plaintiff's counsel drafted.  Accordingly, Defendant Café Asia respectfully requests that this Court compel Plaintiff to produce these crucial images.

## II.     FACTUAL BACKGROUND

### A.     Plaintiff's Employment at Café Asia

Plaintiff found work at Café Asia through another gay waiter who worked at Café Asia, Ariya Tjea.  Plaintiff met Mr. Tjea on a gay dating website, and when Plaintiff mentioned that he

was looking for work, Mr. Tjea told him about the opportunity at Café Asia.  Mr. Tjea then spoke with Yan Yan Joey, the manager of Café Asia, who arranged an interview with Plaintiff. Declaration of Yan Yan Joey ("Joey Decl.") ¶ 2.  On September 18, 2005, Plaintiff began his employment at Café Asia.

      B.    <u>Plaintiff's Behavior at Work</u>

Immediately after starting his employment, Plaintiff talked openly to all and sundry about his sexual orientation, preferences, and escapades.  He often commented on male customers in the restaurant, telling other employees which men he thought were "cute," which ones were not wearing any underwear, and which ones he had slept with.  Joey Decl. ¶ 3.  On one particular occasion, he graphically recalled to his co-workers the intricacies of his prior night's activities, where he had sex with two men simultaneously.  Declaration of Kaoru Sawada ("Sawada Decl.") ¶ 6.  In addition to these graphic conversations about his nightly conquests, Plaintiff also frequently logged on to sexually explicit websites from his supervisor's computer at work, showed his co-workers his own profile and nude photographs on pornographic websites.  Joey Decl. ¶ 5; Sawada Decl. ¶¶ 7, 8.  Plaintiff would then solicit other employees' opinions of which men they found attractive, and use the company computer to contact these prospects from work. *Id*.

In addition to all of this questionable behavior, Plaintiff took many pictures of his own genitalia in various stages of arousal, stored them on his cell phone, and frequently showed his co-workers these pictures at work.  Plaintiff also took cell phone pictures of his various sexual conquests, and showed them to his co-workers, occasionally lamenting that the cell phone video was not long enough to record the full act of intercourse.  Plaintiff showed these cell phone pictures to his Manager, his Supervisor, and many other employees at Café Asia.  Sawada Decl. ¶ 4; Joey Decl. ¶ 4.  Far from considering these cell phone pictures "private," Plaintiff repeatedly

showed these photographs to his co-workers even though they rarely expressed any interest in viewing them.

C.    <u>The E-mail Referenced in Plaintiff's Complaint</u>

After viewing these countless images of Plaintiff's genitals and hearing his graphic discussions of his sexual exploits, Ms. Joey sent Plaintiff an e-mail depicting an all-male group sex scene.  Joey Decl. ¶ 7.  Given the amount of attention he lavished on his own sex life, Plaintiff clearly considered such material arousing and amusing.  In fact, Plaintiff told Ms. Joey that he <u>loved</u> the e-mail.  Joey Decl. ¶ 8.  Far from seeming remotely upset, Plaintiff said he *really enjoyed* this e-mail.  *Id.*

Shortly thereafter, Plaintiff asked for and was given permission to take an extended vacation.  Plaintiff never returned from the vacation and the following year he filed this lawsuit.  Even before Plaintiff filed his Complaint in this matter, Defendant Café Asia sent Plaintiff's former counsel a Notice pursuant to the Federal Rules of Civil Procedure to preserve electronic evidence, including the images Plaintiff stored on his cell phone which are now the focus of this Motion.  <u>Exh. A</u> attached to the Moving Papers.  Defendant sent this Notice on September 20, 2006, and has reiterated this request repeatedly in the last nine months.

Significantly, Defendant is <u>not</u> seeking any of Plaintiff's contact information, call history, or any information about Plaintiff's personal contacts.  Defendant is <u>only</u> seeking those graphic images stored on Plaintiff's phone, which Plaintiff himself chose to share with his co-workers.  As described below, sexual discrimination claims require a very fact-specific inquiry.  These cell phone images are <u>critical</u> for evaluating the context of Plaintiff's sexual orientation discrimination claim.

## III.    ARGUMENT

### A.    The Scope of Discovery Under the Fed. R. Civ. P. is Extremely Broad

Discovery in this case is governed by Fed. R. Civ. P. 26.  The scope of discovery under the Federal Rules is extremely broad, and provides that "Parties may obtain discovery regarding any matter, not privileged, that is _relevant_ to the claim or defense of any party . . . ."  Fed. R. Civ. P. 26(b)(1).  In fact, "relevant information" need not even be admissible, as long as it "_appears_ reasonably calculated to lead to the discovery of admissible evidence."  _Id._

In fact, Washington D.C. courts strictly guard against encroachments on this broad discovery standard.  For instance, in _Laxalt v. McClatchy_, 809 F.2d 885 (D.C. Cir. 1987), the U.S. Court of Appeals for the District of Columbia Circuit _reversed_ the D.C. District Court's decision requiring defendant, the party seeking discovery in that case, to demonstrate some "need" for the records it was seeking.  _Id._ at 886:  "We hold that the District Court applied the wrong legal standard in ruling that, as a prerequisite to invoking discovery at all, the parties seeking access to files must establish a specific "need" for the documents beyond mere relevance to the underlying litigation."

In _Laxalt_, the defendant newspaper wanted to obtain certain FBI files, which were protected by the Privacy Act, in order to defend themselves against a libel suit.  As indicated above, the Circuit Court _overruled_ the District Court's effort to make defendant demonstrate that it needed these sensitive FBI files, and held that the only "test for discoverability is the _relevance_ standard of Rule 26(b) of the FRCP."  _Id._ at 889.

Photos of Plaintiff's genitalia, which he stored on his cell phone to show his co-workers, are not nearly as "sensitive" as the FBI files involved in _Laxalt_.  The Federal Privacy Act protected the Laxalt records from voluntary disclosure – yet the court still required the FBI to produce them.  Plaintiff's pictures of himself and his various naked lovers are not protected by

any such laws. Moreover, if they were, then Plaintiff has already violated such laws and waived

any such protections by showing the pictures to others. In fact, Plaintiff has not articulated *any*

basis for privilege, and merely asserts his generic "privacy" concerns. As explained below, the

images in questions are directly relevant to establishing the atmosphere against which the

"offensive" conduct must be gauged. These pictures are directly relevant to his core claim.

Therefore, under the "relevance" standard of Fed. R. Civ. P. 26(b)(1), and the D.C. Circuit

Court's holding in *Laxalt*, those cell phone images must be produced.

B.    The Images on Plaintiff's Cell Phone are Directly Relevant to his First Cause of Action under the DC Human Rights Act

1. **The DC Human Rights Act Requires Plaintiff to Prove that He was Subject to UNWELCOME Sexual Conduct**

Plaintiff's First Cause of Action is for "Sexual Orientation Discrimination" under the DC

Human Rights Act. Plaintiff does not plead any specific facts to substantiate this cause of action,

and does not even cite any specific provision of the DC Human Rights Act, which he claims was

violated. However, Plaintiff's pre-suit demand letter indicates that the crux of Plaintiff's claim is

hostile work environment sexual harassment. (That is, Plaintiff never alleges that he was subject

to disparate treatment, *quid pro quo* harassment, or any form of retaliation, so this leaves "hostile

work environment.")[1]

---

[1]    The basic text of the DC Human Rights Act simply provides: "It shall be an unlawful discriminatory practice to do any of the following acts, wholly or partially for a discriminatory reason based upon actual or perceived: race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, family responsibilities, genetic information, disability, matriculation, or political affiliation of any individual: . . . *By an employer* – To fail or refuse to hire, or to discharge, any individual; or otherwise to discriminate against any individual, with respect to his compensation, terms, conditions, or privileges of employment, including promotion; or to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his status as an employee." D.C. Human Rights Act of 1977 ["DCHRA"], D.C. Code § 1402.11 (a)(1). The DCHRA does not set forth the elements

To establish a claim for hostile work environment under the DC Human Rights Act, Plaintiff must prove:

(1) that he was a member of a protected class;

(2) that he was subjected to <u>unwelcome</u> sexual harassment;

(3) the harassment he complains of was based upon sex;

(4) the charged sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance and creating an intimidating, hostile, or offensive working environment; and [where the employer is being sued],

(5) the existence of *respondeat superior* liability.

*Davis v. Coastal International Security, Inc*., 275 F.3d 1119, 1122 (D.C. Cir. 2002).  *See also Daka, Inc. v. Breiner*, 711 A.2d 86, 92 (D.C. 1998) (explaining that DC courts "rely significantly on federal cases interpreting Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq*.," and setting forth the identical elements for a sexual harassment claim under the DC Human Rights Act.)  *See also Cromer-Kendall v. District of Columbia*, 326 F. Supp. 2d 50 (D.D.C. 2004) (reciting same federal elements to state claim under DCHRA).

Plaintiff will have serious problems proving several of these elements, including the conspicuous lack of any "adverse employment action," since Plaintiff was never fired, demoted, or otherwise penalized for his sexual orientation, which was shared by many members of Café Asia's staff, manager, and the owner himself.  Instead, Plaintiff voluntarily left on a month-long vacation and chose never to return.  However, for purposes of this motion, Defendant will only focus on the <u>third</u> element above, which requires Plaintiff to prove that he was subject to **<u>unwelcome</u>** sexual conduct.

---

of any type of discrimination or harassment claim, and for this we turn to the Proposed Civil Jury Instructions for DC § 24.syn, Title VII law, and DC cases which track Title VII.

The DC Circuit Court defines "unwelcome conduct" as "conduct which the employee did not solicit or invite and which the employee regarded as undesirable or offensive." *Daka, Inc. v. Breiner*, 711 A.2d 86, 96 (DC 1998). As the U.S. Supreme Court emphasized, whether language and conduct is <u>subjectively</u> offensive to a particular plaintiff depends upon the *individual circumstances* of each case. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 22 (1993). <u>When the plaintiff engages in the same conduct himself, courts have refused to find the challenged conduct "unwelcome."</u> *Hocevar v. Purdue Rederick Co.*, 223 F.3d 721, 736-37 (8th Cir. 2000) ("use of offensive language was not unwelcome because [plaintiff] used the offensive language herself"); *see also Beach v. Yellow Freight System*, 312 F.3d 391, 396 (8th Cir. 2002) (accord).

Without a doubt, the key issue at trial will be whether the e-mail sent by Ms. Joey was truly "unwelcomed sexual harassment." The allegedly offensive e-mail was sent to Plaintiff only after he had flooded the work place with countless nude images of himself and his partners. As described above, not only did Plaintiff provoke much of the sexual banter and initiate sexual horseplay himself, but it stretches credulity that a person who takes pictures of his naked penis in various states of arousal, brings in naked pictures of men he has slept with, shares gay porn in the workplace, and brags at work about his all-male *ménage a trois*, was terribly offended by one sexually explicit e-mail.

In order to understand whether the e-mail was truly offensive, it **must** be analyzed in the context of all of Plaintiff's prior behavior, including the cell phone images. If Plaintiff led the life of a choirboy and avoided all references to his sexual and/or homosexual conduct, the e-mail may truly have been unwelcomed and harassing. If, however, Plaintiff was as open and graphic about his sexuality as alleged, the e-mail was probably both welcomed and appreciated. Either

way, there is no doubt that the images on Plaintiff's cell phone are <u>directly relevant</u> to the determination of whether the e-mail in question was truly "unwelcomed sexual harassment."

### 2.  Sexual Discrimination Claims Require Very Fact-Specific   Inquiries

The U.S. Supreme Court has repeatedly instructed that courts must engage in a very fact-specific analysis when considering claims of sexual harassment and discrimination, because this inquiry "requires careful consideration of the **<u>social context</u>** in which particular behavior occurs and is experienced by its target." *Oncale v. Sundowner Offshore Services Inc.*, 523 U.S. 75, 81 (1998). *See also Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993); *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) [emphasizing <u>contextual</u> analysis of harassment claims]. As the Supreme Court explained, this contextual analysis is necessary because "the real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Oncale*, 523 U.S. at 82.

Washington DC courts apply this Supreme Court standard very <u>strictly</u> in order "to ensure that courts and juries do not mistake ordinary socializing in the workplace – such as male-on-male horseplay or intersexual flirtation – for discriminatory 'conditions of employment.'" *Jones v. Potter*, 301 F. Supp. 2d 1, 9 (D.D.C. 2004), citing *Oncale*, 523 U.S. at 81.

In *Jones* itself, the plaintiff Mr. Jones claimed that his direct supervisor "came up behind [plaintiff], grabbed his arms, pulled Mr. Jones toward him, and rubbed his penis against Mr. Jones' buttocks.  Mr. Jones pulled away from Supervisor Wallace, but before Mr. Jones could turn around, Supervisor Wallace pulled Mr. Jones back toward him, and rubbed his penis against Mr. Jones' buttocks again." *Id*. at 4.

The DC District Court emphasized that although Supervisor Wallace's behavior was distasteful, it was in the nature of "horseplay," rather than genuine homosexual harassment.  *Id.*

at 5.  Thus, the *Jones* court concluded, as a matter of law, that "while Mr. Wallace's actions may have been in bad taste, and personally offensive, they were not severe enough to constitute a hostile working environment."  *Id.* at 11.  Accordingly, the court dismissed Mr. Jones' hostile work environment claim with prejudice, and granted defendant's motion for summary judgment.

Similarly, in *Davis v. Coastal International Security, Inc.*, 275 F.3d 1119, 1122 (D.C. Cir. 2002), the DC Circuit Court held that defendant's co-workers' behavior towards plaintiff, which included repeatedly grabbing their crotches and making kissing gestures at plaintiff, and "uttering a phrase used to describe oral sex," did <u>not</u> constitute sex discrimination.  *Id.* at 1126. The court characterized this undeniably unpleasant conduct as "a workplace grudge match," <u>not</u> sex-based discrimination.  *Id.* at 1119.

The *Davis* court explained that obscene language is "commonplace in certain circles, and more often than not, when these expressions are used (particularly when uttered by men speaking to other men), their use has no connection whatsoever with the sexual acts to which they make reference – even when they are accompanied, as they sometimes were here, with a crotch-grabbing gesture.  Ordinarily, they are simply expressions of animosity or juvenile provocation . . . ."  *Id.* at 1124.  Accordingly, the *Davis* court affirmed the district court's grant of summary judgment in favor of defendants.  *Id.* at 1119.

Once again, in order to determine the specific nature of Plaintiff's workplace, it is important to view the nature of the items Plaintiff himself brought into the workplace.  If Plaintiff considered graphic photographs of his private parts to be standard workplace behavior, then this will dramatically alter the merits of his claim.  At the very least, the evidence is, without a doubt, relevant.  Defendant must be permitted to inspect Plaintiff's cell phone in order to determine the nature of the images that Plaintiff routinely showed his co-workers.

C.    This Court's Precedent Requires Evaluating Plaintiff's Cell Phone Images

The fact-specific analytical framework set forth in *Jones* and *Davis* controls this case, and requires evaluating Plaintiff's allegations of sexual harassment and discrimination in the context of his own behavior.  The pornographic images Plaintiff stored on his cell phone and showed to countless co-workers -- at work, during working hours -- are <u>critical</u> to understand the standards of behavior Plaintiff himself set.  This is not some attenuated, irrelevant issue Defendant dredged up from the past for the improper purpose of embarrassing Plaintiff.  To the contrary, the images on Plaintiff's cell phone go to the very <u>core</u> of his claim.  They are a critical part of the <u>context</u> against which Plaintiff's claims here must be considered, and therefore form a mandatory legal component of the sexual discrimination analysis.

It is a basic principle of fairness and of law, that <u>when the plaintiff engages in the same conduct himself, courts have refused to find the challenged conduct "unwelcome."</u>  *Hocevar v. Purdue Rederick Co.*, 223 F.3d 721, 736-37 (8th Cir. 2000) ("use of offensive language was not unwelcome because [plaintiff] used the offensive language herself"); *see also Beach v. Yellow Freight System*, 312 F.3d 391, 396 (8th Cir. 2002) (accord).  Therefore, Plaintiff's cell phone images are a critical component of this case.  If Plaintiff did not consider showing his co-workers pornographic pictures of himself and his various lovers to be offensive, how can he claim that an e-mail depicting anonymous strangers offended his delicate sensibilities?

D.    Plaintiff's Generic Privacy Concerns do Not Foreclose Discovery into Directly Relevant Facts Crucial to Plaintiff's First Cause of Action

Plaintiff cannot initiate a lawsuit into delicate sexual harassment issues, and then invoke a generic "privacy" concern to prevent Café Asia from presenting a meaningful defense against Plaintiff's core claim.  As an initial matter, the claim of "privacy" must be seen as no more than an attempted litigation tactic.  Plaintiff obviously had no "privacy" concerns when he was

showing these pictures to Defendant's employees.  It is simply ridiculous for Plaintiff to claim now that Defendant should be prevented on "privacy" grounds from getting discovery of pictures Plaintiff voluntarily showed to Defendant's employees.

The magic word "privacy" does not automatically foreclose discovery.  Instead, Plaintiff's belated concern about his privacy must be balanced against other legitimate interests in the case.  Specifically, DC courts consider "the requester's need for the information from this particular source, its relevance to the litigation at hand, the burden of producing the sought-after material, and the harm which disclosure would cause to the party seeking to protect the information."  *Burka v. HHS*, 87 F.3d 508, 517 (D.C. Cir. 1996); *see also United States v. Microsoft Corp*., 165 F.3d 952, 959 (D.C. Cir. 1999) (applying balancing test to make Bill Gates' deposition public).

Applying *Burka*'s balancing test to Plaintiff's cell phone images here compels the conclusion that they must be disclosed.  *First*, there is no question that the images Plaintiff stored on his cell phone and showed to his co-workers are <u>directly relevant</u> to the core issue in this case, specifically, the <u>context</u> of Plaintiff's sexual discrimination claim.  These images are critical to demonstrate Plaintiff's *own* behavior at work, on which background the Court may consider whether Plaintiff found the single e-mail in question subjectively "offensive."

*Second*, Defendant needs these images to show the context of Plaintiff's claim, and Defendant has no other source from which to obtain these images than Plaintiff himself.  *Third*, Plaintiff will suffer no "burden" from producing his own cell phone.  Defendant is not asking for twenty years of corporate files.  It will take only a minimal amount of time for Defendant to download these images, at no cost to Plaintiff.  *Finally*, since the whole point of these images is that Plaintiff himself showed these images to his co-workers, there would be no additional

"harm" to him that he has not already voluntarily brought upon himself. He long ago opted to make these images public by showing them to his co-workers. Therefore, Plaintiff's newly discovered privacy interest in pictures of his own genitalia cannot trump Defendant's compelling need to show the context of Plaintiff's own sexually explicit behavior.

Furthermore, the parties already agreed upon a Stipulated Protective Order, which the Court has subsequently entered, that strictly limits the use of the images on Plaintiff's cell phone to this litigation only (Document 19, filed May 29, 2007). In fact, Defendant accepted Plaintiff's own proposed Protective Order with very minor changes. Thus, Defendant has taken every precaution to protect Plaintiff's privacy, short of relinquishing its right to defend itself against Plaintiff's lawsuit.

In *Laxalt*, the D.C. Circuit Court allowed discovery into FBI files because: "As we have noted in the past, such traditional devices as protective orders and *in camera* inspection offer reliable means with which to give effect to liberal discovery principles without threatening the interests protected by statutory publication bans." 809 F.2d at 889. These are exactly the kind of protections to which the parties here have already agreed. Also, in *U.S. v. Microsoft*, Justice Ginsburg held that Rule 26(c) on protective orders is "highly flexible, having been designed to accommodate all relevant interests as they arise." *U.S. v. Microsoft*, 165 F.3d at 959. If Justice Ginsburg thought that a Rule 26(c) protective order was good enough to protect the privacy interests of Microsoft and Bill Gates, it should certainly be sufficient to protect the privacy interests of Plaintiff.

Plaintiff should not be permitted to disseminate a plethora of sexually explicit material at work, featuring himself and his bevy of lovers in starring roles, sue Defendant for discrimination, and then turn around and pretend this material is "too private" to show. There is nothing unfairly

prejudicial about these pictures; they are simply highly probative of Plaintiff's own lewd behavior. Plaintiff cannot claim that his filing a sexual orientation discrimination suit transforms these pictures that he publicly displayed into private material and use that as a basis to deprive Defendant of a fair opportunity to defend itself against Plaintiff's lawsuit.

## V.    CONCLUSION

Plaintiff cannot invoke a generic "privacy" concern to block discovery into absolutely critical and directly relevant evidence. For all the foregoing reasons, Defendant Café Asia respectfully requests that the Court <u>grant</u> this Motion to Compel, and <u>order</u> Plaintiff to produce those graphic images, which were stored on his cell phone during his employment at Café Asia.

Because the images stored on Plaintiff's cell phone are critical to understanding the context of Plaintiff's sexual discrimination claim, moving party Café Asia respectfully requests the opportunity to present oral argument on this motion.

Respectfully submitted,

Dated:  June 9, 2007

Kevin B. Bedell (D.C. Bar No. 451555)
Greenberg Traurig, LLP
1750 Tysons Boulevard, Suite 1200
McLean, VA 22102
Tel:  (703) 749-1339
Fax:  (703) 714-8339

William Ihrke (D.C. Bar No. 483748)
Jeffrey Wertheimer (*pro hac vice*)
Anna Kogan (*pro hac vice*)
Rutan & Tucker, LLP
611 Anton Blvd., Fourteenth Floor
Costa Mesa, CA 92626
Tel:  (714) 641-5100
Fax:  (714) 546-9035

*Counsel for Defendant Café Asia*



**RUTAN**
ATTORNEYS AT LAW

**Jeffrey Wertheimer**
Direct Dial: (714) 662-4612
E-mail: jwertheimer@rutan.com

September 20, 2006

**VIA FACSIMILE AND U.S. MAIL**

Avi Kumin, Esq.
Katz, Marshall & Banks, LLP
1718 Connecticut Avenue, N.W.
Sixth Floor
Washington, D.C. 20009

      Re:    Andrei Smith v. Café Asia

Dear Mr. Kumin:

      As you know, this office has been retained to represent the interests of Café Asia in the above-referenced dispute. I have completed an initial investigation into the allegations contained in your September 7, 2006 correspondence, and while I will be providing a thorough response to those allegations by the end of this week, I am writing this letter to put your client on notice that he should take all efforts to preserve all documents, photographs, magazines, and video recordings that he shared with the management and staff at Café Asia, and/or that relate to his employment at Café Asia. This request specifically includes, but is not limited to, items stored on Mr. Smith's cell phone.

      This request includes, but is not limited to, the following items:

- Numerous photographs of Mr. Smith's penis, in various states of arousal;

- Still photographs of nude men, some of which were and are Mr. Smith's sexual partners;

- One or more video recordings of men in various states of arousal shortly before they engaged in sexual acts with Mr. Smith;

- A video recording of Mr. Smith bending over and grinding his buttocks into the groin of an 18 year old boy employed by Café Asia;

- Nude photographs of Mr. Smith, stored a number of places, but eventually posted on one or more internet sites; and

- Photographs relating to the first time Mr. Smith had phone sex with a man when he was 14 years old.

Rutan & Tucker, LLP ¦ 611 Anton Blvd, Suite 1400, Costa Mesa, CA 92626
PO Box 1950, Costa Mesa, CA 92628-1950 ¦ 714-641-5100 ¦ Fax 714-546-9035
Orange County ¦ Palo Alto ¦ www.rutan.com

2237/025499-0001
747328.01 a09/20/06

**RUTAN**
ATTORNEYS AT LAW

Avi Kumin, Esq.
September 20, 2006
Page 2


While all of these items may appear to be related solely to Mr. Smith's personal life, I assure you that every one of these above-referenced items has been viewed in the workplace by numerous co-workers and as such they are extremely relevant to any litigation that may arise.

Thank you for your anticipated cooperation in this matter. If you have any questions concerning any of the above, please do not hesitate to contact me.

Very truly yours,

Jeffrey Wertheimer
RUTAN & TUCKER, LLP

JW:klg

2237/025499-0001
747328.01 a09/20/06

## Confirmation Report—Memory Send

```
Time      : Sep-20-06  11:02am
Tel line 1 : 714-546-9035
Tel line 2 : 714-546-9035
Name      : RUTAN & TUCKER,LLP
```

| | | |
|---|---|---|
| Job number | : | 625 |
| Date | : | Sep-20 10:59am |
| To | : | ##000528#912022991148 |
| Document Pages | : | 03 |
| Start time | : | Sep-20 10:59am |
| End time | : | Sep-20 11:02am |
| Pages sent | : | 03 |

Job number     : 625          *** SEND SUCCESSFUL ***

---

### RUTAN & TUCKER, LLP
**Attorneys at Law**
**611 Anton Boulevard, 14th Floor**
**Costa Mesa, California 92626-1931**
**Mailing Address: Post Office Box 1950, Costa Mesa, California 92628-1950**
**Telephone: 714.641.5100          Facsimile 714.546.9035**

---

## FACSIMILE TRANSMISSION

DATE:     SEPTEMBER 20, 2006

TO:                                          Hard Copy to Follow via Mail:  **YES**

| NAME | FAX NO. | PHONE NO. |
|---|---|---|
| **Avi Kumin, Esq.** | **(202) 299-1148** | **(202) 299-1140** |

FROM:    **Jeffrey Wertheimer – 2237**

RE:       **Andrei Smith v. Café Asia**

| CLIENT/MATTER NO.: **025499-0001** | NUMBER OF PAGES, INCLUDING COVER: **3** |
|---|---|

MESSAGE:

THE INFORMATION CONTAINED IN THIS FACSIMILE MESSAGE IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT OR AGENT RESPONSIBLE TO DELIVER THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE.  THANK YOU.

If there are problems receiving this Fax Transmittal please call 714 641 5100, ext 1235

237/025499-0001
a00/00/00

**UNITED STATED DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **ANDREI SMITH** | ) | |
| | ) | |
| | ) | **Assigned to Magistrate Judge** |
| Plaintiff, | ) | **John M. Facciola** |
| | ) | |
| v. | ) | **Civil Case No. 07 CV 621 (RWR)** |
| | ) | |
| **CAFÉ ASIA** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF YAN YAN JOEY
## IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL
## PRODUCTION OF IMAGES STORED ON PLAINTIFF'S CELL PHONE

I, Yan Yan Joey, declare and state as follows:

1. I am currently an employee of Café Asia, Defendant in this lawsuit. I have worked for Café Asia from 1993 to the present. I have been a manager at Café Asia since 1995. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath. I am over the age of 18 years and I understand the obligations of an oath.

2. Sometime during the Fall of 2005 it came to my attention that Plaintiff Andrei Smith ("Plaintiff") was interested in working at Café Asia. This came to my attention when Ariya Tjea, a waiter at Café Asia, informed me that he met Plaintiff on-line at a gay website. I then interviewed and eventually hired Plaintiff. During the course of Plaintiff's employment (approximately September 2005 to August 2006), I was Plaintiff's Night Manager.

3. During the course of his employment, Plaintiff would frequently comment to me, and to other employees within my hearing, that this or that male customer was "cute," and

informed us of which men he had sex with. At least once a week Plaintiff would point out a male patron with whom he had sexual intercourse. Plaintiff talked openly, graphically, and constantly, about his sexual preferences and experiences. I did not solicit or request him to do so, but he constantly spoke of his private sexual affairs to me. I am married, I have a child, and I had no interest in his private life.

4.    I know that Plaintiff kept nude pictures of himself and various men with whom he had sex with on his cell phone, and he showed these nude pictures to me and many of his other co-workers at Cafe Asia. I never asked to see these pictures, since I have no interest in Plaintiff's genitals.

5.    Throughout the course of his employment, I saw Plaintiff come into the back office during working hours, log onto the company computer, and check out various gay websites of which he was a member. He would point out to me and other co-workers pictures of men he had had sex with and those whom he wanted to have sex with.

6.    Plaintiff also often told me and his other co-workers about the gay clubs he frequented, and about all the men he met there and took to bed. Plaintiff also brought in gay pornographic magazines to work and would show me pictures of the naked men featured in the magazine. He would comment in detail about the size, length, and shape of the various men's genitals. Plaintiff showed this gay pornography to many people at work. Some would laugh, others walked away. I do not know why he showed me these pornographic pictures, I never asked to see them.

7.    Since Plaintiff often showed me and others at Cafe Asia various gay pictures on the internet, some employees concluded that he enjoyed these pictures. On one occasion a Cafe Asia waitress forwarded me an e-mail showing several photographs of an all-male group sex

scene. After some brief conversation, she suggested that I forward it to Plaintiff and Mr. Tjea. I understand that is the e-mail Plaintiff now complains about.

8.    However, a day or two after I forwarded this e-mail to Plaintiff and Mr. Tjea, I heard Plaintiff, Mr. Tjea, and the waitress, all discussing this group sex e-mail. It was clear from the conversation that Plaintiff most definitely enjoyed the e-mail. Plaintiff told me "Oh, the e-mail you sent made me feel so good." He then went into detail on how such behavior at all-male parties occurs and that he knows lots of guys who would love to go to a party like that. Plaintiff did not seem in the least bit upset or unhappy; quite to the contrary, he behaved like he really enjoyed the e-mail, and was very pleased with it.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 8 , 2007 at _____.

_____
Yan Yan Joey

**UNITED STATED DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ANDREI SMITH** )<br><br>       **Plaintiff,** )<br><br>       **v.** )<br><br>**CAFÉ ASIA** )<br><br>       **Defendant.** )<br>_____ ) | Civil Case No. 07 CV 621 (RWR) |

**DECLARATION OF KAORU SAWADA**
**IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL PLAINTIFF**
**TO PRODUCE IMAGES STORED ON PLAINTIFF'S CELL PHONE**

I, Kaoru Sawada, declare and state as follows:

1.      I am currently an employee of Café Asia, Defendant in this lawsuit.  I have worked at Café Asia from August 1994 to the present.  I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.  I am over the age of 18 years and I understand the obligations of an oath.

2.      During the course of Plaintiff Andrei Smith's ("Plaintiff") employment at Café Asia (approximately September 2005 to August 2006), I was Plaintiff's supervisor.

3.      Very early in his employment at Café Asia, Plaintiff made it clear to me that he is gay.  During the entire course of his employment, he never once complained to me that he was in any way teased, ridiculed, or otherwise mistreated because of his homosexuality.

4.      At the beginning of Plaintiff's employment, he showed me unsolicited photos of his private parts.  He showed me pictures of his genitalia when he was both flaccid and erect.  All of these pictures were on his cell phone.  I never asked to see these pictures, as I have

absolutely no interest in Plaintiff's genitals. Besides showing his naked pictures to me, I know that Plaintiff showed pictures of his genitalia to many of his other co-workers at Café Asia. Plaintiff also showed me photographs of the numerous men with whom he had sexual intercourse. Many of the men in these cell phone photographs were nude and at different stages of arousal.

5.    Plaintiff told me about his first gay sexual experience, when he was 14 years old. He told me that since that experience, he has never erased or deleted any of his e-mails or photos.

6.    Plaintiff also told me personally about having sex with two men simultaneously, in very graphic detail. Again, I never asked Plaintiff about his sex life, but Plaintiff volunteered this information because he was very proud of his gay *ménage a trois*.

7.    While Plaintiff was employed at Café Asia, he would frequently come into my office, log onto the company computer, and check his e-mails on the pornographic website, www.manhunt.net. Plaintiff explained to me that this is a very explicit website, on which he posted his profile and naked pictures of himself, in order to "hook up" with other gay men. Plaintiff showed me many pictures of the naked men on this website, and identified to me the various men with whom he has had sexual intercourse. He would also ask my opinion about which men were good looking, and then he would e-mail those men to say he was interested in them.

8.    Plaintiff also logged on to other gay pornographic websites from my office at work. As Plaintiff explained to me, members of these websites (like Plaintiff) would communicate with each other through these websites. Plaintiff explained that he was just checking his e-mail, to see which website users tried to contact him. In my presence, Plaintiff logged on to such gay websites at least a dozen times.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 7th, 2007 at 1550 Wilson Blvd, Arlington, VA.

Kaoru Sawada

UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

ANDREI SMITH                               )
                                           )
                                           )
                    Plaintiff,             )
                                           )
         v.                                )         Civil Case No. 07 CV 621 (RWR/JMF)
                                           )
CAFÉ ASIA                                  )
                                           )
                    Defendant.             )
_____)

## ORDER
## ON DEFENDANT'S MOTION TO COMPEL PLAINTIFF TO PRODUCE
## IMAGES STORED ON PLAINTIFF'S CELL PHONE

This cause came before the Court upon Defendant's Motion to Compel Plaintiff to

Produce those images which were stored on Plaintiff's cell phone during Plaintiff's employment

at Café Asia.  The Court having consider that motion, the memoranda in support and opposition,

such other matter as was presented at the hearing of this motion, the other papers and pleadings

in this action, and having heard argument of counsel, it is this _____ day of _____,

2007, hereby

ORDERED that Defendant's Motion to Compel is GRANTED; and it is further

ORDERED that Plaintiff shall produce his cell phone to Defendant's counsel for

inspection on _____, 2007, or five days from the date of this Order, whichever is later.


                                        _____
                                        JOHN M. FACCIOLA
                                        UNITED STATES MAGISTRATE JUDGE